*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LAKELAND NEUROCARE CENTERS and VHS
OF MICHIGAN, INC, doing business as
DETROIT MEDICAL CENTER,

UNPUBLISHED
October 8, 2019

Plaintiffs-Appellants,

and

JACULYN GORDON,

Intervening Plaintiff,

v

No. 340346
Wayne Circuit Court
LC No. 17-005081-NF

EVEREST NATIONAL INSURANCE
COMPANY, ARROWHEAD GENERAL
INSURANCE AGENCY, and NDS INSURANCE
AGENCY, INC, doing business as PREMIER
INSURANCE AGENCY XXV,

Defendants-Appellees.

LAKELAND NEUROCARE CENTERS and VHS
OF MICHIGAN, INC, doing business as
DETROIT MEDICAL CENTER,

Plaintiffs,

and

JACULYN GORDON,

Intervening Plaintiff-Appellee,

v

No. 340349
Wayne Circuit Court

EVEREST NATIONAL INSURANCE                    LC No.  17-005081-NF
COMPANY,

                    Defendant-Appellant,

and

ARROWHEAD GENERAL INSURANCE
AGENCY and NDS INSURANCE AGENCY,
INC, doing business as PREMIER INSURANCE
AGENCY XXV,

                    Defendants.

_____

Before:  JANSEN, P.J., and CAMERON, and TUKEL, JJ.

PER CURIAM.

In Docket No. 340346, plaintiffs Lakeland Neurocare Centers (Lakeland) and VHS of Michigan (VHS), doing business as Detroit Medical Center (DMC) (collectively, "plaintiffs"), appeal by leave granted[1] the trial court order granting defendant Everest National Insurance Company (Everest) summary disposition in this third-party no-fault matter.[2]  Plaintiffs argue on appeal that the trial court erred when it granted Everest summary disposition because plaintiffs had valid assignments, antiassignment clauses are void, the assignments made a present transfer of rights, the antiassignment clause is unenforceable to postloss claims, the assignments were permitted under the no-fault act, MCL 500.3101 *et seq.*, and the antiassignment clause is ineffective under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*  Plaintiffs also argue that the trial court erred when it denied their request to file an amended complaint.  We agree that Everest was not entitled to summary disposition, but the trial court did not commit plain error affecting substantial rights when it declined plaintiffs' request to file an amended complaint.  Accordingly, we reverse, and remand for further proceedings consistent with this opinion.

_____

[1] *Lakeland Neurocare Ctrs v Everest Nat'l Ins Co*, 502 Mich 936; 916 NW2d 214 (2018).  The Michigan Supreme Court remanded both of these consolidated cases to this Court for consideration as on leave granted.  *Id*. at 936.

[2] Although the Supreme Court order remanding these cases for consideration as on leave granted denotes defendants Arrowhead General Insurance Agency and NDS Insurance Agency, Inc, doing business as Premier Insurance Agency XXV, as "Defendants-Appellees," the order appealed from by plaintiffs grants [only] Everest summary disposition.  Plaintiffs' claims against these other defendants were not decided by the trial court, and they have not filed any briefs on appeal in either of these consolidated cases.

In Docket No. 340349, Everest appeals by leave granted[3] the trial court order granting intervening plaintiff Jaculyn Gordon's motion to intervene in this no-fault matter.[4] Everest argues on appeal that the trial court erred in determining that Gordon's complaint related back to plaintiffs' complaint. Additionally, Everest argues that *Shah v State Farm Mut Auto Ins Co*, 324 Mich App 182; 920 NW2d 148 (2018), was wrongly decided, but if it is upheld, Gordon lacked standing to intervene, and if *Shah* is reversed, and the antiassignment clause is upheld, plaintiffs had no standing, and the court lacked subject-matter jurisdiction. We disagree in part because the trial court did not abuse its discretion in allowing Gordon to intervene, but we agree with Everest's contention that Gordon's claims did not relate back to the filing of plaintiffs' complaint. Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. RELEVANT FACTUAL BACKGROUND

This case arises from an automobile accident involving Gordon on June 27, 2016, from which she sustained injuries. Gordon struck a pot hole at a high speed, and sustained a broken arm, dislocated hip, and multiple pelvic fractures that required surgery. Plaintiffs provided medical services to Gordon in relation to her injuries in the amount of $288,073.52. At the time of the accident, Gordon had an insurance policy with Everest. When plaintiffs tried to claim benefits under Gordon's policy for the services that they provided to Gordon, Everest attempted to rescind Gordon's auto insurance policy, claiming that Gordon did not disclose a licensed driver of her household on her application for insurance.

Gordon initially executed an assignment of benefits to plaintiffs on March 18, 2017, and plaintiffs filed suit on March 30, 2017, alleging their assignee status. The Michigan Supreme Court issued its opinion in *Covenant Med Ctr, Inc v State Farm Mut Auto Ins Co*, 500 Mich 191; 895 NW2d 490 (2017), on May 27, 2017, holding that medical providers have no direct cause of action against insurers for personal protection insurance (PIP) benefits. On June 14, 2017, Everest filed a motion for summary disposition seeking to dismiss plaintiffs' claims under *Covenant*. Gordon executed a second assignment of benefits to plaintiffs on June 17, 2017, because she was still receiving treatment for her accident-related injuries. On July 28, 2017, Gordon filed an emergency motion to intervene as a party plaintiff. The trial court granted Everest summary disposition under *Covenant*, and upheld the antiassignment clause in Gordon's insurance policy. The trial court also granted Gordon's motion to intervene, and determined that her claims related back to the date that plaintiffs filed their complaint. Plaintiffs and Everest filed applications for leave to appeal these orders in this Court, which were denied.[5] Plaintiffs

---

[3] See footnote 1.

[4] Although defendants Arrowhead and NDS opposed Gordon's motion to intervene in the trial court, they have not challenged the trial court order granting intervention or otherwise participated in this appeal.

[5] *Lakeland Neurocare Ctrs v Everest Nat'l Ins Co*, unpublished order of the Court of Appeals, entered February 16, 2018 (Docket No. 340346); *Lakeland Neurocare Ctrs v Everest Nat'l Ins Co*, unpublished order of the Court of Appeals, entered February 16, 2018 (Docket No. 340349).

and Everest filed for leave to appeal in the Michigan Supreme Court, which remanded both cases to this Court as on leave granted.[6] We consolidated these cases for appeal on remand.

## II. DOCKET NO. 340346

### A. EVEREST'S MOTION FOR SUMMARY DISPOSITION

Plaintiffs argue on appeal that the trial court erred in granting Everest summary disposition because they had valid assignments from Gordon that reflected an intent to make a present transfer, the antiassignment clause in the policy was void and unenforceable as to postloss claims, the assignments were valid under the no-fault act, and the antiassignment provision was ineffective under the UCC. We agree that the trial court erred in granting Everest summary disposition because plaintiffs had valid assignments from Gordon.

This Court reviews de novo a trial court's grant of summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). Everest moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiffs failed to state a claim upon which relief could be granted under *Covenant*. However, the trial court considered materials outside of the pleadings that the parties attached to their briefs, so the motion should be evaluated on appeal under MCR 2.116(C)(10). *Shah*, 324 Mich App at 206. See also, *El-Khalil v Oakwood Healthcare, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157846); slip op at 9-11, 10 n 5 (where the trial court considered evidence attached to pleadings as substantive evidence, review under MCR 2.116(C)(8) was improper).

The court determined that there was an antiassignment clause in the Everest insurance policy, which it upheld. The policy was attached to Everest's reply to plaintiffs' response to Everest's motion for summary disposition. The assignments that plaintiff relied on were attached to its response to Everest's motion for summary disposition. Although a written instrument forming the basis for a claim or defense attached or referred to in a pleading may be treated as "part of the pleading for all purposes," MCR 2.112(F), neither the insurance policy, nor the assignments were attached or referred to in a pleading. A "pleading" includes only a "complaint, cross-claim, counterclaim, third-party complaint, an answer to any of the aforementioned pleadings, or a reply to an answer." MCR 2.110(A). See *Shah*, 324 Mich App at 206-207. The insurance policy and the assignments were not attached to the complaint, or to Everest's answer to plaintiffs' complaint.

Thus, the standard of review for MCR 2.116(C)(10) applies:

A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. A motion pursuant to MCR 2.116(C)(10) is reviewed by considering the pleadings, admissions, and

---

[6] See footnote 1.

-4-

other evidence submitted by the parties in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. It is well settled that the circuit court may not weigh the evidence or make determinations of credibility when deciding a motion for summary disposition. Moreover, a court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper. [*Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (citations, quotation marks, emphasis and brackets removed).]

In addition, "[t]he interpretation of contractual language, as well as the determination of whether that contractual language is ambiguous, is a question of law that we review de novo." *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 445; 886 NW2d 445 (2015) (citations and quotation marks omitted).

In *Covenant*, the Michigan Supreme Court held that "healthcare providers do not possess a statutory cause of action against no-fault insurers for recovery of personal protection insurance benefits under the no-fault act," but rather, "a provider that furnishes healthcare services to a person for injuries sustained in a motor vehicle accident may seek payment from the injured person for the provider's reasonable charges." *Covenant*, 500 Mich at 196, 217. Therefore, the trial court did not err when it determined that, as an initial matter, *Covenant* applied to preclude plaintiffs' claims because they were medical providers. Plaintiffs did not have a direct cause of action against Everest for Gordon's bills. *Id*. "[A] provider simply has no statutory cause of action of its own to directly sue a no-fault insurer." *Id*. at 217-218. Plaintiffs' cause of action would be against Gordon, the patient, rather than the insurer, Everest. *Id*. at 217. Therefore, the trial court did not err when it determined that plaintiffs could not directly bring a claim for Gordon's unpaid bills against Everest under *Covenant*.

However, the trial court erred in determining that the assignments from Gordon to plaintiffs were unenforceable because of the antiassignment clause in Everest's policy that required written consent for an assignment.

*Covenant* provides that a healthcare provider does not have a statutory cause of action against a no-fault insurer. *Covenant*, 500 Mich at 217-218. This decision applied retroactively. *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159, 196; 909 NW2d 38 (2017). Rather, a healthcare provider must recover costs directly from "the person to whom services were provided." *Covenant*, 500 Mich at 218. However, this did not alter "an insured's ability to assign his or her right to past or presently due benefits to a healthcare provider." *Id*. at 217 n 40. Under generally applicable principles of contract law, rights can be assigned unless the assignment is clearly restricted. *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). An assignee stands in the shoes or position of the assignor, possessing the same rights, and being subject to the same defenses as the assignor. *Id*.

The rules of contract interpretation apply to insurance policies. *Rory v Continental Ins Co*, 473 Mich 457, 461; 703 NW2d 23 (2005), implied overruling on other grounds recognized in *W A Foote Mem Hosp*, 321 Mich App at 183-184. "In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent

to a reader of the instrument." *Rory*, 473 Mich at 464. Unambiguous contracts must be enforced as written. *Id*. at 468. "[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written." *Id*. at 461. Although clear and unambiguous, a contract provision is unenforceable if it violates law or public policy. *Shah*, 324 Mich App at 197. Assignments are generally permitted unless the contract clearly states otherwise. *Id*.

In *Shah*, this Court held that an antiassignment clause in an insurance policy was unenforceable for violating Michigan public policy. *Id*. at 200. The policy in *Shah* provided, " 'No assignment of benefits or other transfer of rights is binding upon *us* [i.e., defendant] unless approved by *us*.' " *Id*. at 198. An individual was injured in a motor vehicle accident on November 30, 2014, and the defendant insurance company was his insurer. *Id*. at 186. The plaintiffs provided care and medical services to the individual, and submitted their costs to the defendant, but the defendant refused to pay. *Id*. The plaintiffs submitted their original complaint on February 24, 2017, and the *Covenant* decision was issued on May 25, 2017. *Id*. The plaintiffs obtained an assignment of rights from the injured individual on July 11, 2017, in order to pursue payment of no-fault benefits for the services that the plaintiffs already provided. *Id*. at 187-188. This Court held that the antiassignment clause was unenforceable as to an assignment obtained after the loss occurred for an accrued claim of payment because the prohibition of such an assignment in the policy violated Michigan public policy. *Id*. at 200. This Court subsequently reaffirmed the holding in *Shah*. *Henry Ford Health Sys v Everest Nat'l Ins Co*, 326 Mich App 398, 405; 927 NW2d 717 (2018), held in abeyance 926 NW2d 258 (2019) ("Accordingly, we must conclude that the antiassignment clause in defendant's policy is unenforceable because it is contrary to public policy.").[7]

The language of Everest's auto insurance policy is clear and unambiguous. Gordon's policy with Everest provided:

**TRANSFER OF YOUR INTEREST**

Interest in this Policy may not be assigned without our written consent.

As argued by plaintiffs, however, courts have refused to enforce antiassignment clauses when the loss at issue occurs before the assignment was executed. In *Shah*, the Court stated:

"The assignment having been made after the loss did not require consent of the company. The provision of the policy forfeiting it for an assignment without the company's consent is invalid, so far as it applies to the transfer of an accrued

---

[7] We recognize that the Michigan Supreme Court has ordered the scheduling of oral argument on the application for leave to appeal filed in *Shah* to address the validity of antiassignment clauses. *Shah v State Farm Mut Auto Ins Co*, 503 Mich 882, 882; 918 NW2d 528 (2018). However, as of this date, *Shah* remains binding precedent, and must be followed. MCR 7.215(C)(2); MCR 7.215 (J)(1). The Supreme Court is also holding the appeal in *Henry Ford Health Sys* in abeyance pending the *Shah* decision. *Henry Ford Health Sys*, 926 NW2d at 258.

cause of action. It is the absolute right of every person–secured in this state by statute–to assign such claims, and such a right cannot be thus prevented. It cannot concern the debtor, and it is against public policy." [*Shah*, 324 Mich App at 199, quoting *Roger Williams Ins Co v Carrington*, 43 Mich 252, 254; 5 NW 303 (1880).]

As such, Everest's argument that Gordon's assignments were void on the basis of the policy language lacks merit, and the trial court erred in upholding the antiassignment clause. Gordon's car accident occurred on June 27, 2016. She made postloss assignments to plaintiffs on March 18, 2017, and June 17, 2017. Therefore, the trial court erred in granting Everest summary disposition because plaintiffs could proceed with their claims under the valid assignments executed by Gordon, despite the antiassignment clause in the insurance policy. *Shah*, 324 Mich App at 199.

Although Everest argues on appeal that *Roger Williams* is no longer good law, the *Shah* Court recognized:

[A]s our Supreme Court has instructed, we are bound to follow its decisions except where those decisions have clearly been overruled or superseded. There is no indication that *Roger Williams* or its holding relating to antiassignment clauses has been clearly overruled or superseded. Therefore, if the continued validity of *Roger Williams* is to be called into question, it will have to be by our Supreme Court. [*Shah*, 324 Mich App at 201 (quotation marks and citation omitted).]

Because this Court recognized that unambiguous contract terms must generally be enforced as written, yet also applied *Roger Williams*, this Court must continue to follow *Shah*. MCR 7.215(J)(1); *Holland Home v Grand Rapids*, 219 Mich App 384, 394; 557 NW2d 118 (1996) ("A decision by any panel of this Court is controlling precedent until a contrary result is reached by this Court or the Supreme Court takes other action.").

Because this matter is governed by, and resolved under, the no-fault act, and corresponding case law, it is unnecessary to discuss plaintiffs' argument regarding the UCC on appeal. See *Henry Ford Health Sys*, 326 Mich App at 401-402 (where the plaintiff healthcare provider argued in the lower court in response to Everest's motion for summary disposition that the antiassignment clause was void under the UCC, this Court held that the clause was unenforceable under *Shah*, and did not discuss the UCC).

Regardless, because this case pertains to a no-fault action, "the more specific statute controls." *Mich Deferred Presentment Servs Ass'n v Comm'r of Office of Fin & Ins Regulation*, 287 Mich App 326, 334; 788 NW2d 842 (2010). *Shah* is the leading case on the validity of antiassignment clauses, and nowhere does it rely on the UCC to render antiassignment or consent

-7-

clauses invalid. Rather, the *Shah* Court deemed antiassignment clauses unenforceable because of public policy. *Shah*, 324 Mich App at 198-201. This reasoning applies in this case as well.[8]

## B. PLAINTIFFS' REQUEST FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiffs also argue on appeal that the trial court erred when it denied their request for leave to file a first amended complaint to clarify that they had valid standing under the assignments. We disagree.

"Generally, an issue is not properly preserved if it is not raised before, addressed by, or decided by the lower court or administrative tribunal." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Plaintiffs argued in their response to Everest's motion for summary disposition that they should be granted leave to file a first amended complaint to more specifically allege that their action was on the basis of assignments from Gordon. Everest did not respond to this argument in its reply to plaintiffs' response. The trial court held a hearing on Everest's motion for summary disposition, and the parties argued consistent with their briefs. The court determined that plaintiffs had no cause of action under *Covenant*, and upheld the antiassignment clause in the insurance policy, dismissing plaintiffs' claims. In dismissing plaintiffs' suit, the court, therefore, had no reason to specifically address and decide plaintiffs' request to amend. However, this means that the issue is unpreserved for appeal. *Id*.

It is within the discretion of the trial court to grant or deny leave to amend pleadings. *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). The trial court "may, on reasonable notice and on just terms, permit [a] party to serve a supplemental pleading." MCR 2.118(E). An abuse of discretion occurs when the decision of the trial court is outside the range of reasonable and principled outcomes. *Shah*, 324 Mich App at 208. However, the review of this Court of an unpreserved error is limited to a determination of whether a plain error occurred affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. at 328-329 (quotation marks and

---

[8] We note that decisions of other courts have recognized lower court decisions determining that the UCC prohibited antiassignment clauses. See *ZMC Pharmacy, LLC v State Farm Mut Auto Ins Co*, 307 F Supp 3d 661, 671 (ED Mich, 2018) ("Relatedly, Michigan courts have held post-*Covenant* that the Michigan [UCC] prohibits restrictions on assignments of healthcare insurance receivables. [Citing *Mich Brain and Spine Surgeons, PLLC v State Farm Mut Auto Ins Co*, No. 17-158827-NF, Oakland County Cir Ct, August 9, 2017, slip op at 6] ('The UCC plainly prohibits all restrictions on a health[]care provider's receiving and relying on a patient assignment of benefit due in payment for services from an insurance company. . . .').") Decisions of lower federal courts are not binding on this Court, but may be considered as persuasive authority. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

citation omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

We acknowledge that plaintiffs were required to attach the assignments to their complaint because their assignment-related claim was "based on a written instrument." MCR 2.113(C)(1).[9] An attached written instrument becomes "part of the pleading for all purposes." MCR 2.113(C)(2). Summary disposition may be appropriate under MCR 2.116(C)(8) when a written instrument is not attached to a complaint as required. *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). Although plaintiffs asserted in their complaint that they were assignees of Gordon (because Gordon executed assignments before plaintiffs filed suit), plaintiffs did not attach the assignments to their complaint. Plaintiffs attached the assignments as an exhibit to their response to Everest's motion for summary disposition, and therein requested, if necessary, leave to file a first amended complaint to clarify their standing as assignees.

MCR 2.116(I)(5) provides that "[i]f the grounds asserted [for summary disposition] are based on subrule (C)(8), (9), or (10), the court *shall* give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." (Emphasis added.) When summary disposition is granted under MCR 2.116(C)(10), the court should allow the nonprevailing party to amend its pleadings unless amendment is unjustified or futile. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52-54; 684 NW2d 320 (2004). A motion to amend should be denied only for particularized reasons, including undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility. *PT Today, Inc*, 270 Mich App at 143. The trial court must provide specific reasons for denying leave to amend. *Id*. Failure to do so requires reversal unless the amendment would be futile. *Id*. "[A]mendment is generally a matter of right rather than grace." *Id*. Here, the trial court granted Everest's motion for summary disposition under *Covenant*, and upheld the antiassignment clause in the policy, so it did not discuss plaintiffs' request to amend.

MCR 2.118(D) provides that an "amendment that adds a claim or defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading." Amended pleadings may relate back to the date of the original pleadings, but supplemental pleadings cannot. *Shah*, 324 Mich App at 203. MCR 2.118(E) governs supplemental pleadings, and provides:

> On a motion of a party the court may, on reasonable notice and on just terms, permit the party to serve a supplemental pleading to state transactions or events that have happened since the date of the pleading sought to be supplemented,

_____

[9] This provision was found in MCR 2.113(F)(1) at the time of the lower court proceedings, and before the Michigan Supreme Court amended the court rule, effective September 1, 2018.

whether or not the original pleading is defective in its statement of a claim for relief or a defense.

In *Shah*, the plaintiff medical providers filed suit directly against the defendant insurer, and after *Covenant* was issued, the plaintiffs obtained assignments. *Id*. at 187-189. Then the plaintiffs sought to amend their complaint to bring their lawsuit under an assignment-of-rights theory. *Id*. at 202-203. This Court had to determine whether the plaintiffs' request constituted an amended complaint, or a supplemental pleading, for purposes of the relation-back doctrine. *Id*. at 202-205.

It is routinely recognized that "[a]n assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Burkhardt*, 260 Mich App at 654. Thus, the *Shah* Court determined that the plaintiffs were afforded only the same rights that the injured person possessed as of the date of the assignment. *Shah*, 324 Mich App at 204. Additionally, the *Shah* Court determined that the plaintiffs' attempt to amend their complaint was actually an attempt to supplement the pleadings. The *Shah* court reasoned that "the procurement of the assignments was an event that occurred *after* the filing of the original complaint and provided the only means by which plaintiff[ ] could have standing to maintain a direct action against defendant insurer for recovery of no-fault benefits in this case." *Id*. (emphasis added), citing *Covenant*, 500 Mich at 195-196, 217 n 40. And a supplemental pleading under MCR 2.118(E) cannot relate back to the date of the original pleading. *Shah*, 324 Mich App at 204-205.

On one hand, this case is distinguishable from the facts in *Shah* because Gordon executed the first assignment before plaintiffs filed suit. Gordon executed the first assignment of benefits on March 18, 2017, and plaintiffs filed their complaint on March 30, 2017, asserting their assignee status. However, after plaintiffs filed suit and *Covenant* was issued, Gordon executed a second assignment on June 17, 2017. Under *Covenant*, the assignments "provided the only means by which plaintiffs could have standing to maintain a direct action against defendant insurer for recovery of no-fault benefits." *Id*. at 202-204. Thus, plaintiffs' request to amend their complaint was actually a request to supplement the pleadings, and the relation-back doctrine would not apply. *Id*.

However, this is irrelevant because Gordon executed the first assignment on March 18, 2017, which is the date upon which the one-year-back rule in MCL 500.3145 would apply. Even though the complaint was filed thereafter, the date of the first assignment marks the relevant date for the one-year-back rule. *Id*. at 204. The validity of assignments is subject to scrutiny under the one-year-back rule in MCL 500.3145, which was recently amended[10], and provides:

> (1) An action for recovery of personal protection insurance benefits payable under this chapter for an accidental bodily injury may not be commenced later than [one] year after the date of the accident that caused the injury unless

[10] See 2019 PA 21.

-10-

written notice of injury as provided in subsection (4) has been given to the insurer within [one] year after the accident or unless the insurer has previously made a payment of personal protection insurance benefits for the injury.

(2) Subject to subsection (3), if the notice has been given or a payment has been made, the action may be commenced at any time within [one] year after the most recent allowable expense, work loss, or survivor's loss has been incurred. However, the claimant may not recover benefits for any portion of the loss incurred more than [one] year before the date on which the action was commenced.

(3) A period of limitations applicable under subsection (2) to the commencement of an action and the recovery of benefits is tolled from the date of a specific claim for payment of the benefits until the date the insurer formally denies the claim. This subsection does not apply if the person claiming the benefits fails to pursue the claim with reasonable diligence.

(4) The notice of injury required by subsection (1) may be given to the insurer or any of its authorized agents by a person claiming to be entitled to benefits for the injury, or by someone in [sic] the person's behalf. The notice must give the name and address of the claimant and indicate in ordinary language the name of the person injured and the time, place, and nature of the person's injury.

(5) An action for recovery of property protection insurance benefits may not be commenced later than [one] year after the accident.

"The one-year-back rule is designed to limit the amount of benefits recoverable under the no-fault act to those losses occurring no more than one year before an action is brought." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 203; 815 NW2d 412 (2012).

Plaintiffs sought to recover benefits from the date of the car accident, June 27, 2016, through the date of the second assignment, June 17, 2017. Because June 27, 2016, is within one year back of the first assignment on March 18, 2017, and the second assignment on June 17, 2017, plaintiffs could make a claim for these bills under the valid assignments. MCL 500.3145(1). As such, there was no plain error affecting substantial rights in the trial court's failure to allow plaintiffs to file a first amended complaint because the assignments were signed before the complaint was filed, making the relation-back doctrine a nonissue. Plaintiffs obtained the rights of Gordon upon the execution of her assignments, and the services rendered were within one year back of the date of each assignment. Thus, there was no plain error that affected the outcome of the proceedings because plaintiffs obtained the rights of Gordon to claim PIP benefits upon the date of the first assignment. Because the trial court erred in granting Everest summary disposition, and remand for further proceedings is appropriate, plaintiffs may proceed on their claims upon remand without filing an amended complaint or supplemental pleading. Their status as assignees was made clear in their original complaint.

## III. DOCKET NO. 340349

### A. GORDON'S MOTION TO INTERVENE

Everest argues on appeal that the trial court abused its discretion by allowing Gordon to intervene, depending on the outcome of the appeal of *Shah* in the Michigan Supreme Court.[11] If *Shah* is affirmed, and the assignments are valid, Everest argues that Gordon lacked standing to intervene. If *Shah* is reversed, and the assignments are invalid, then plaintiffs lacked standing to file suit, and the order allowing Gordon to intervene is erroneous because the trial court lacked subject-matter jurisdiction. We disagree with Everest's assertion that the trial court abused its discretion by allowing Gordon to intervene.

"This Court reviews a trial court's decision on a motion to intervene for an abuse of discretion." *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). " 'An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes.' " *Id*. (citation omitted).

As an initial matter, Everest's arguments on appeal depend on the outcome of the mini oral argument scheduled in *Shah* in the Michigan Supreme Court. *Shah* is a published decision of this Court with binding precedential effect. See MCR 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals."); MCR 7.215(J)(1) ("A panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, . . . ."). "It is the [Michigan] Supreme Court's obligation to overrule or modify [caselaw] if it becomes obsolete, and until [the Michigan Supreme] Court takes such action, the Court of Appeals and all lower courts are bound by that authority." *Lakin v Rund*, 318 Mich App 127, 137-138; 896 NW2d 76 (2016) (quotation marks and citations omitted). The *Shah* decision remains binding on this Court, and as explained in detail above, the assignments from Gordon to plaintiffs were valid and enforceable under *Shah*, despite the antiassignment clause. Therefore, under the assignments, plaintiffs had standing to file suit. *Covenant*, 500 Mich at 217 n 40. And Everest's arguments depending on the reversal of *Shah* are not properly before this Court. "A party may not premise an action on a hypothetical controversy." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017).

Thus, the issue on appeal is whether the trial court abused its discretion by granting Gordon's motion to intervene when plaintiffs had valid assignments from Gordon, allowing them to pursue claims against Everest. *Id*. This is a close determination.

Legal actions must be prosecuted in the name of the real party in interest. MCL 600.2041. "A real party in interest is one who is vested with the right of action on a given claim,

---

[11] See footnote 7.

-12-

although the beneficial interest may be in another." *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 356; 833 NW2d 384 (2013) (quotation marks and citation omitted). "The real-party-in-interest rule requir[es] that the claim be prosecuted by the party who by the substantive law in question owns the claim asserted. . . ." *Id*. (quotation marks and citation omitted).

Under the no-fault act, PIP benefits are payable "to or for the benefit of an injured person." MCL 500.3112. *Covenant* made clear that the claim for payment of PIP benefits under the no-fault act belongs to the injured party. *Covenant*, 500 Mich at 210-217. Because Gordon had a statutory claim to payment under the no-fault act, she had a cause of action for those benefits when Everest refused to pay the bills for the services rendered by plaintiffs. *Id*.

Intervention of right is governed by MCR 2.209(A), which provides:

> **(A) Intervention of Right.** On timely application a person has a right to intervene in an action:
>
> (1) when a Michigan statute or court rule confers an unconditional right to intervene;
>
> (2) by stipulation of all the parties; or
>
> (3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The trial court granted Gordon's right to intervene under MCR 2.209(A)(3) for the reasons set forth in Gordon's brief, relying on *Botsford Gen Hosp v Citizens Ins Co*, 195 Mich App 127; 489 NW2d 137 (1992). In *Botsford*, issued before *Covenant*, the medical provider hospital and the injured person filed suit against the no-fault insurer. *Id*. at 130. On appeal, the insurer argued that the hospital was barred from intervening under the statute of limitations provided in MCL 500.3145 (one year after the accident unless written notice of the injury was provided to the insurer within one year). *Id*. at 139-140. This Court determined that notice to the insurer was provided in the complaint, which was filed within the statutory period, and the hospital's claims did not change or enlarge the injured person's claims already in existence. *Id*. at 141. Thus, the trial court did not err in granting the hospital's motion to intervene. *Id*.

The trial court recognized the distinguishable facts between this case and *Botsford*, namely, that Gordon, the injured person, sought to intervene in the case between the medical provider and the insurer, whereas in *Botsford*, the medical provider sought to intervene in the case between the injured person and the insurer. Despite this difference, the trial court determined that Everest had notice of the claims through plaintiffs' complaint, so Gordon was allowed to intervene. This was not an abuse of discretion.

Under MCR 2.209(A)(3), Gordon had an interest in the transaction because she had a right to claim benefits under the no-fault act, MCL 500.3112. Under her insurance policy with Everest, Everest was obligated to provide PIP benefits to Gordon. Plaintiffs provided healthcare

services to Gordon after she was injured in the car accident, so Gordon had an interest in plaintiffs' action for reimbursement. Should Everest be found not responsible to reimburse plaintiffs, Gordon would still be liable for the payment of her medical bills, totaling $288,073.52. MCR 2.209 is to be "liberally construed to allow intervention where the applicant's interests may be inadequately represented." *State Treasurer v Bences*, 318 Mich App 146, 150; 896 NW2d 93 (2016) (quotation marks and citations omitted). Thus, the trial court did not abuse its discretion by granting Gordon leave to intervene by right.

Alternatively, Gordon argues on appeal that permissive intervention was appropriate despite the valid assignments to plaintiffs. Permissive intervention is governed by MCR 2.209(B):

> **(B) Permissive Intervention.** On timely application a person may intervene in an action
>
> (1) when a Michigan statute or court rule confers a conditional right to intervene; or
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

Under subsection (B), a court deciding a request for permissive intervention must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." MCR 2.209(B).

Gordon's action had the same factual basis as plaintiffs' action, namely, the car accident that led to her injuries. Gordon's action had the same question of law as plaintiffs' action, namely, whether Everest was responsible to pay for the medical bills for treatment Gordon received for the injuries she sustained in the car accident. Permissive intervention was not considered by the trial court because it granted Gordon's motion as intervention by right; however, Gordon's intervention would not unduly delay or prejudice the adjudication of the rights of plaintiffs.

## B. RELATION BACK OF GORDON'S CLAIMS

Everest argues on appeal that the trial court erred in determining that Gordon's claims relate back to the date of the original complaint filed by plaintiffs because Gordon did not seek to add new claims or defenses, but rather, Gordon is a new party, and the addition of new parties cannot relate back. We agree that Gordon's claims do not relate back.

The interpretation and application of a statute presents a question of law that this Court reviews de novo. *Rambin v Allstate Ins Co*, 495 Mich 316, 325; 852 NW2d 34 (2014). Specifically, "[w]hether the relation-back doctrine is applicable is a question of law that this Court reviews de novo." *Local Emergency Fin Assistance Loan Bd v Blackwell*, 299 Mich App 727, 740-741; 832 NW2d 401 (2013).

MCR 2.118(D) provides in part:

-14-

An amendment that adds a claim or a defense relates back to the date of the original pleading if the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth, or attempted to be set forth, in the original pleading.

The relation-back doctrine, however, does not apply to the addition of new parties. *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). There is also no relation back for supplemental pleadings. *Shah*, 324 Mich App at 203; *Grist v Upjohn Co*, 1 Mich App 72, 84; 134 NW2d 358 (1965).

Gordon is clearly a different party than plaintiffs. She is not seeking to add new claims or defenses, MCR 2.118(D), but rather, assert the same claims as plaintiffs, but as a different party. Therefore, her claims would not relate back to the date of plaintiffs' complaint. Because Gordon's claims would not relate back to the date of the filing of the original complaint, she could only claim benefits dating one year back from the date that she filed her intervening complaint under MCL 500.3145, which was September 21, 2017. Because we affirm Gordon's ability to intervene, her claims on remand are limited to this period of time.

IV. CONCLUSION

In Docket No. 340346, we reverse, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

In Docket No. 340349, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel

-15-