# STATE OF MICHIGAN

# COURT OF APPEALS

In re ALI, Minors.

UNPUBLISHED
August 11, 2016

No. 330976
Kent Circuit Court
Family Division
LC Nos. 14-051329-NA;
14-052982-NA

Before: SERVITTO, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's December 9, 2015 order terminating her parental rights to the minor child, WA, under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist), and terminating her parental rights to WA and to the minor child, LA, under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to the parent). We affirm.

In June 2011, the Department of Health and Human Services ("DHHS")[1] petitioned for a guardianship for LA because of mother's neglect, drug use, and failure to comply with treatment for her mental health issues. LA was placed in a guardianship with mother's mother later that month. WA was born in December 2013. Mother admitted that she smoked marijuana almost every day while she was pregnant with him and that she used cocaine in October 2013. Mother admitted to having a history of drug use and unstable housing. The DHHS provided mother with services to address her drug use, parenting skills, and emotional health. Mother failed to benefit from the services and struggled to meet WA's basic needs. For example, she failed to take him to a doctor when he was showing clear signs of breathing trouble. In April 2014, the trial court removed WA from mother's care because of her failure to properly care for him. A psychological evaluation shortly thereafter revealed that mother had cognitive deficits that could affect her ability to care for her children. In August 2014, the DHHS submitted a petition to the trial court alleging that the guardianship over LA would terminate at the end of the month and asked the trial court to prevent LA from being placed back in mother's custody. The trial court

---

[1] Formerly, the Department of Human Services and the Department of Community Health were separate. The Department of Human Services initiated this matter. Because the departments are now one, we will refer to the department as "DHHS."

ordered that LA not be returned to mother. Although mother succeeded in staying off of illegal drugs for several months before termination of her rights, she failed to make progress in addressing her mental health issues, parenting skills, or managing her resources.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Mother makes no argument on appeal with regard to the trial court's findings concerning statutory grounds. Rather, mother argues that the trial court clearly erred in finding that termination was in the children's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012); MCL 712A.19b(5). This Court reviews the trial court's determination of best interests for clear error. *Id.* When considering best interests, the focus is on the child rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). In determining a child's best interests, a trial court should weigh all available evidence. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home[.]" *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). A trial court may also consider how long the child lived in foster care or with relatives and the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

The trial court found that termination was in the children's best interests because mother would need several months to rectify the barriers to reunification, but the children needed stability, which the children's foster home was willing to provide them. We see no clear error in this finding. WA had developmental delays while he was in mother's care. There is evidence that mother actually contributed to these delays by failing to properly interact with him and by refusing to consent to his surgery in 2014. It was only after WA entered foster care that he began to overcome his delays. Likewise, mother failed to properly address LA's weight problem. WA and LA were placed in the same foster home, and their foster parents were willing to adopt them. Evidence shows that the foster parents cared for the proper development of the minor children, whereas mother spent the majority of her parenting time feeding the children and watching television with them. She was often frustrated and anxious during visits. The clear advantages of the foster home over mother's care support the trial court's finding that termination was in the children's best interests. *In re Olive/Metts*, 297 Mich App at 42. In sum, mother's cognitive deficit, her inability to understand the children's needs, and her inability to comply with and benefit from services show that it was unlikely that the minor children "could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249. For the above reasons, the trial court did not clearly err in finding that termination of mother's parental rights was in the children's best interests. *In re Moss*, 301 Mich App at 80.

Mother argues that the trial court clearly erred in finding that termination was in the minor children's best interests because the trial court failed to place the children with her brother, who was a relative of the children. MCL 712A.13a(1)(j). The trial court, however, was not required to place the minor children with a relative. *In re McIntyre*, 192 Mich App 47, 52; 480 NW2d 293 (1991). Indeed, "[i]f it is in the best interests of the child, the trial court may properly

-2-

terminate parental rights instead of placing the child with relatives." *Id*.; see also *In re Olive/Metts*, 297 Mich App at 43. As discussed above, the trial court properly found that termination of mother's rights was in the children's best interests, and it was not required to place the children with Salahuddin. *In re McIntyre*, 192 Mich App at 52.

Mother appears to argue that the DHHS failed to make reasonable efforts to reunify her with the minor children by not placing them with mother's brother. We review this unpreserved argument for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328-329; 750 NW2d 603 (2008). Mother's brother testified that he inquired about placement in 2014, and again in June 2015, but that the children could not be placed with him because his wife was on the central registry. He testified that his divorce was finalized in July 2015, but there is no indication that the DHHS knew of this. Evidence shows that the DHHS investigated the possibility of relative placement several times throughout the proceedings, and there is no indication that its efforts were unreasonable. We find no plain error. *Id.*

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher

-3-