*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERICA ELIZABETH BRYANT, also known as
ERICA CASH,

        Plaintiff-Appellee,

v

TERRELL NATHAN BRYANT,

        Defendant-Appellant.

UNPUBLISHED
December 10, 2025
12:45 PM

No. 374708
Oakland Circuit Court
LC No. 2015-837446-DM

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

A default judgment of divorce entered in 2016 awarded custody of the parties' three-year-old child, PB, to plaintiff, Erica Elizabeth Bryant. The judgment included a provision that dictated the parenting-time schedule for defendant, Terrell Nathan Bryant. The parenting-time schedule was modified in 2017, but the custody award remained undisturbed for more than eight years. In 2024, however, defendant filed a motion (followed by an amended motion) for joint legal custody and expanded parenting time. The parties resolved the matter of expanded parenting time, but they presented their dispute about legal custody to the trial court in 2025. After conducting a hearing, the trial court not only denied defendant's motion for joint legal custody, but also imposed attorney fees against defendant in the amount of $1,400 because his motion was frivolous. On appeal, we affirm the denial of the custody motion, but we reverse the award of attorney fees and remand the case to the trial court to vacate that award.

## I. FACTUAL BACKGROUND

The parties married in Chicago in 2010. After PB was born in 2013, the family moved to Michigan. Plaintiff filed a complaint for divorce in December 2015, seeking joint legal and sole physical custody of PB. Defendant failed to appear for mediation and for trial, and the trial court granted plaintiff's request for entry of a default. Plaintiff thereafter moved to enter a judgment of divorce against defendant, who appeared at the hearing on that motion and objected to plaintiff's proposed parenting-time schedule and proposed child-support order. Defendant described himself as unemployed and unable to exercise his parenting time each weekend because he was moving to

Chicago. The trial court issued a default judgment of divorce and also entered the proposed orders prescribing parenting time and child support, explaining to defendant that when he actually moved and obtained employment, he would have an actual change of circumstances to make objections.

For nearly two years, the parties returned to court for issues related to parenting time and child support. Years later, in September 2024, defendant filed a motion for joint legal custody and expanded parenting time, requesting an evidentiary hearing. Defendant alleged that joint custody was in PB's best interests because defendant's communication with plaintiff was a challenge. He argued that several changes of circumstance had occurred that warranted modification of custody, including: (1) plaintiff had remarried and had had another child; (2) plaintiff also had a residence in Chicago; (3) defendant had remarried and PB had a sound relationship with his stepfamily; (4) PB now had stepfamily in Europe, and PB had expressed his desire to travel to Europe to visit his stepcousins; (5) defendant was financially secure, had his own residence, and worked fewer hours than plaintiff; (6) PB was older, had changed developmentally and emotionally, and had expressed a desire to spend more time with defendant; and (7) defendant was more attuned to the educational struggles of PB, whereas plaintiff was not proactive in working with PB, was "slow to act on their son's behalf," and "seems to be more focused on her own career and busy schedule."

Before the hearing on defendant's motion took place, the trial court notified the parties that the motion would be considered by the Friend of the Court at a prehearing settlement conference. The notice stated that if the parties did not settle at that meeting, "and the moving party wants the motion to be heard by the Judge, the moving party MUST submit a re-praecipe and file a re-notice of hearing identifying the Wednesday on which you want the motion heard" by the trial court. The settlement conference occurred in October 2024. In November 2024, plaintiff moved to modify defendant's child-support order, and filed a notice of hearing on that motion. Defendant submitted a motion praecipe and filed a re-notice of hearing of his motion, scheduling it to be heard the same day. The parties were once again notified that the motions would first be addressed by the Friend of the Court at a prehearing settlement conference, which occurred on December 11, 2024.

On December 30, 2024, the parties stipulated to an agreement on parenting time and child support. After the case was reassigned to a new judge, the trial court signed both of those orders. Defendant then filed an amended motion for joint legal custody, asserting that all issues had been resolved except whether he had demonstrated a change of circumstances to warrant holding a best-interests hearing. Defendant asked that the issue not be resubmitted to the Friend of the Court, and he requested a hearing before the trial court. In response, plaintiff argued there were no remaining issues to resolve because the referee had told defendant that he had not met the burden to modify custody, and plaintiff asked the trial court to give her attorney fees under MCL 600.2591 and MCR 2.625(A)(2). On February 12, 2025, the trial court held a hearing on defendant's amended motion. The trial court ruled that defendant had not met his burden because the changed circumstances that he identified were normal life occurrences that would not have a significant impact on PB's well-being. Thus, the trial court denied defendant's amended motion, determined that it was frivolous, and awarded plaintiff attorney fees. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, defendant challenges the trial court's denial of his motion for joint legal custody and the trial court's award of attorney fees based on its finding that his motion was frivolous. We will address those two issues in turn.

## A. DENIAL OF JOINT LEGAL CUSTODY

The trial court denied defendant's motion for joint legal custody by deciding that he failed to meet his threshold obligation under *Vodvarka v Grasmeyer*, 259 Mich App 499, 513; 675 NW2d 847 (2003), to establish proper cause or a change of circumstances sufficient to allow the trial court to consider a change in custody. The Child Custody Act of 1970, MCL 722.21 *et seq.*, "promotes the best interests of the child by ensuring a stable environment free of unnecessary and disruptive custodial modifications[,]" and it "limits a court's power to modify previous judgments or orders regarding custody and parenting time." *Barretta v Zhitkov*, 348 Mich App 539, 550-551; 19 NW3d 420 (2023).

"Under MCL 722.27, a trial court may modify or amend a previous child custody order or judgment for proper cause shown or because of change of circumstances if doing so is in the child's best interests." *Merecki v Merecki*, 336 Mich App 639, 645; 971 NW2d 659 (2021) (quotation marks and citation omitted). A party seeking a change in custody has the "burden of establishing, by a preponderance of the evidence, that either proper cause or a change of circumstances exists to warrant a change in custody." *Powery v Wells*, 278 Mich App 526, 527; 752 NW2d 47 (2008); see also MCL 722.27(1)(c). Such a change of circumstances exists only when, "since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a *significant* effect on the child's well-being, have materially changed." *Vodvarka*, 259 Mich App at 513. The change must be "something more than the normal life changes (both good and bad) that occur during the life of a child," because "over time there will always be some changes in a child's environment, behavior, and well-being." *Id.* According to MCL 722.26a(1)(b), to decide whether joint legal custody is in the best interests of a child, a court must consider "[w]hether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child."

Defendant cites several changes in circumstances since the entry of the 2016 custody order, including: (1) defendant obtaining a job; (2) defendant obtaining a permanent home; (3) defendant remarrying and having in-laws in Ireland, thereby enabling PB to experience different cultures and to have a larger family; (4) PB's diagnosis of learning disabilities; and (5) plaintiff's disagreement with defendant about PB attending therapy and being reassessed for a specific learning disability. Defendant characterizes all these changes as not "run-of-the-mill" because they have affected, and will continue to have an impact on, PB's well-being.

Regarding the first three changes, defendant's argument primarily rests on statements that the trial court made in 2016 about his impending move to Chicago being a change in circumstances that could lead to revisiting issues. Notably, the trial court made those statements about parenting time and child support, which have since been modified by agreement. Regardless, the trial court's determination that they were normal life occurrences insufficient to warrant reconsidering custody was not against the great weight of the evidence because the record indicates defendant maintained

his same relationship and parenting time with PB. Nothing indicates that plaintiff prevented PB from visiting Ireland or having a relationship with his stepfamily. On appeal, defendant offers no explanation of how the changes affected PB's well-being in any way, much less in any significant or negative way.

Defendant analogizes PB's learning disability to circumstances in *Dailey v Kloenhamer*, 291 Mich App 660; 811 NW2d 501 (2011), where this Court affirmed a trial court's modification of custody from joint legal custody to sole legal custody after the parties spent months fighting in court about their child's medical treatment. The trial court in *Dailey* decided that the parties were unable to make decisions together, but found the defendant "acquiesced to plaintiff's demands and was open to plaintiff's views," whereas the plaintiff "did not reciprocate defendant's collegiality." *Dailey*, 291 Mich App at 667-669. Unlike the child in *Dailey*, nothing indicates that PB is suffering significantly from delayed treatment, and defendant offers no evidence to the contrary. Although PB does not have a specific diagnosis, he receives educational supports for his learning disability. Defendant acknowledged his involvement with PB's Individualized Education Program and his regular contact with PB's school, but he alleges he "would be better equipped to do so with more information via an assessment." However, defendant cites to no evidence that plaintiff refused to obtain a reassessment or enroll PB in therapy. At the hearing, plaintiff noted that defendant never before mentioned a reassessment, and never responded when asked for therapist suggestions.

Further, defendant's reliance upon *Dailey* is misplaced because the issue in *Dailey* was the parties' inability to work together, which rendered joint legal custody unmanageable. "Joint legal custody, under MCL 722.26a, means that the parents shall share decision-making authority as to the important decisions affecting the welfare of the child." *Kuebler v Kuebler*, 346 Mich App 633, 691; 13 NW3d 339 (2023) (quotation marks omitted). "[F]or joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making." *Id*. at 691-692 (quotation marks and citation omitted). Here, if plaintiff and defendant cannot agree, as defendant suggests, awarding joint legal custody would be counterproductive. But there is no evidence that plaintiff excluded defendant from participating in important matters affecting PB, and considering that the parties reached an agreement resolving parenting time and child support, nothing indicates defendant and plaintiff cannot work together when needed. Thus, defendant has not carried his threshold burden of demonstrating proper cause or a change in circumstances, so the trial court was not obligated to consider awarding defendant joint legal custody, see *Vodvarka*, 259 Mich App at 508, especially when none of his contentions about plaintiff's health-care decisions for PB resulted in a substantial effect on PB's well-being.

## B. ATTORNEY FEES

Defendant describes the trial court's award of attorney fees to plaintiff as an inappropriate response to his amended motion. Attorney fees "are not recoverable as of right in divorce actions." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). But attorney fees may be awarded in a divorce case "where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of litigation." *Id*. at 165. We must "review a trial court's grant or denial of attorney fees for an abuse of discretion." *Id*. at 164.

When defendant moved for joint legal custody and expanded parenting time, the trial court scheduled a prehearing settlement conference with a FOC referee. "The trial court may designate a referee to act as a fact-finder in domestic relations matters." *Rivette v Rose-Molina*, 278 Mich App 327, 329; 750 NW2d 603 (2008); see also MCL 552.507. MCR 3.215(B) allows referees to conduct certain motion hearings, and MCR 3.215(B)(3) authorizes "the judge to whom an action is assigned" to "authorize referees to conduct settlement conferences[.]" In this case, the notice of the settlement conference provided that if the parties did not settle, and the moving party wanted a hearing before the trial court, the moving party had to submit a repraecipe and file a re-notice of hearing. At the settlement conference, the parties did not come to an agreement, but they continued discussions. Shortly thereafter, plaintiff moved to modify child support, at which point defendant submitted a repraecipe and filed a re-notice of hearing for the same date as plaintiff's motion. The trial court scheduled a second prehearing settlement conference, and gave the same notice, which referred to both motions. After the second settlement conference, the parties came to an agreement on parenting time and child support.

But the parties failed to reach an agreement on legal custody, so no new custody order was entered. The parties agree the referee stated in her recommendation that no proper cause or change of circumstance existed to warrant modifying custody, but no written recommendation was issued. After the trial court entered the parties' consent agreements on parenting time and child support, defendant filed an amended motion explaining that the issue of legal custody raised in the original motion remained unresolved. Defendant made clear that he disagreed with the referee's verbal recommendation, so he asked for a direct hearing with the trial court. At the hearing, the trial court stated that it viewed defendant's amended motion as the same as his original motion, and observed that defendant's amended motion was "frivolous" because defendant "has been told multiple times by Friend of the Court that he didn't meet the burden, multiple times, and whether it was in writing or it was verbally, then [he] still continued to file the motions[.]"

"Not every error in legal analysis constitutes a frivolous position." *Kitchen v Kitchen*, 465 Mich 654, 663; 641 NW2d 245 (2002). Indeed, "merely because this Court concludes that a legal position asserted by a party should be rejected does not mean that the party was acting frivolously in advocating its position." *Id*. When considering whether sanctions are appropriate, as a general rule, "it is necessary to evaluate the claims or defenses at issue at the time they were made." *In re Costs & Attorney Fees*, 250 Mich App 89, 94; 645 NW2d 697 (2002).

Here, the trial court determined that defendant's amended motion was frivolous because the referee told him what her recommendation would be, but that recommendation occurred *after* defendant filed his original motion. The fact that the referee stated that she would recommend that defendant had not met his threshold burden does not establish that defendant's initial position was frivolous. Defendant's circumstances had changed since the entry of the custody order. Although defendant's claims of changed circumstances were ultimately deemed unavailing by the trial court, defendant's alleged changed circumstances were fact-dependent, and the changed circumstances that he identified were not unsubstantiated. They were simply insufficient in the trial court's view to satisfy the standards set forth in *Vodvarka*, 259 Mich App at 509-514. Moreover, the trial court had not ruled on defendant's original motion, so he did not know whether the trial court found any defects in the arguments in his original motion when he filed the amended version of that motion. In sum, this case presents a situation where sanctions are inappropriate because we cannot describe

as "frivolous" the arguments made in defendant's original motion and then merely refined in light of procedural developments in the amended version of his motion.

In sum, we affirm the trial court's ruling denying defendant's motion for joint legal custody in both its original form and its amended form, but we reverse the trial court's award of sanctions to plaintiff.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young